# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A., SUCCESOR BY MERGER TO BAC HOME LOANS SERVICING, LP,<br><br>Plaintiff,<br><br>v.<br><br>SOUTH VALLEY RANCH COMMUNITY ASSOCIATION, *et al.*,<br><br>Defendant. | Case No. 2:16-cv-01013-KJD-CWH<br><br>ORDER |

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment (#50). Defendant Hitchen Post Dr. Trust ("Hitchen") filed a response in opposition (#54) to which Plaintiff replied (#59). Defendant South Valley Ranch Community Association ("South Valley") also filed a Motion for Summary Judgment (#62). Plaintiff filed a response in opposition (#63) to which South Valley replied (#66).

I. Facts

Mary Jayne and Charles Swearingen ("Borrowers") financed their property located at 733 Hitchen Post Drive, Henderson, Nevada with a $140,409 loan from Countrywide Bank in 2009. They secured the loan with a deed of trust. Later that year, Countrywide merged into and with Plaintiff Bank of America ("BANA"). BANA received its interest as a beneficiary of the deed of trust by an assignment which was recorded on October 20, 2011.

The property is subject to and governed by the Declaration of Covenants, Conditions and Restrictions and Grant of Easements ("CC&Rs") for South Valley Ranch Community Association. Eventually, Borrowers defaulted on their obligation to pay assessments of approximately $60 quarterly under the CC&Rs to South Valley. On August 7, 2012, South

Valley through its foreclosure agent, Defendant Homeowners Association Services ("HAS"), recorded notice of delinquent assessment lien. HAS recorded notice of default and election to sell on July 17, 2013. The notice stated that Borrowers owed $2,249.03 plus costs and fees.

On August 2, 2013, BANA's counsel offered to pay the superpriority lien and asked for a total. In response, HAS provided an account statement which reflected that Borrowers owed $60 per quarter in assessments. The statement did not indicate that they owed any maintenance or nuisance abatement charges. Based on the ledger, BANA calculated the superpriority amount as $180 (three quarters – or nine months – of annual assessments) and tendered that amount by check to HAS on September 19, 2013. HAS received, but rejected, BANA's tender.

Notice of sale was recorded on January 27, 2014. Foreclosure sale was conducted on or about February 13, 2014. Hitchen purchased the property for $21,100.00. The parties now disagree as to whether South Valley's foreclosure extinguished BANA's lien or whether Hitchen purchased the property subject to the lien.

II. Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

III. Analysis

Bank of America argues that its deed of trust survived South Valley's nonjudicial foreclosure for five discrete reasons: (1) the bank tendered—or was excused from tendering—the superpriority portion of the HOA lien; (2) the association foreclosed under an unconstitutional version of NRS § 116; (3) the foreclosure sale violated due process as-applied; (4) the Supremacy Clause preempts NRS § 116; and (5) the sale was unfair and should be equitably set aside under Shadow Canyon. Because the Court finds Bank of America's tender argument dispositive, it need not reach the bank's other arguments. South Valley, on the other hand, moves for summary judgment on its quiet title claim. It seeks a declaration that South Valley's foreclosure extinguished both BANA's and Borrower's interest in the property. The Court turns first to Bank of America's motions.

A. Tender

Bank of America contends that its attempt to ascertain and pay the superpriority amount of South Valley's lien constituted valid tender and preserved its deed of trust. The Nevada Supreme Court has addressed whether valid tender preserves a lender's deed of trust in a series of recent cases. In Bank of America, N.A. v. SFR Invs. Pool 1, LLC, the Court definitively held that a lender's valid tender prior to the association's foreclosure preserves the lender's first deed of trust. 427 P.3d 113, 118 (Nev. 2018) ("Diamond Spur"). Tender is valid if (1) it pays the entire superpriority lien (id. at 117) and (2) it is unconditional or insists only on conditions the tendering party has a right to insist upon (id. at 118). The tendering party is under no obligation to "keep [the tender] good" or deposit the tender into an escrow or court-established account. Id. at 120–21. At bottom, valid tender voids the association's foreclosure of the superpriority portion of the association's lien, which results in the buyer taking the property subject to the lender's first deed of trust. Id. at 121.

Then, in Bank of America, N.A. v. Thomas Jessup, LLC Series VII, the Nevada Supreme Court reaffirmed the tender rule and carved out an exception where an association makes clear that it will reject tender. 435 P.3d 1217 (Nev. 2019). Thus, a lender can preserve its deed of trust against an association's foreclosure by calculating the superpriority balance and tendering

payment for that amount. Diamond Spur, 427 P.3d at 117. Or, even if money never changes hands, the lender's deed of trust survives foreclosure if it attempted to tender payment, but the association rejects that payment. Thomas Jessup, 435 P.3d at 1220. This Court has adopted the Nevada Supreme Court's reasoning. See RH Kids, LLC v. MTC Fin., 367 F.Supp.3d 1179, 1185–86 (D. Nev. 2019); Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC, No. 2:17-cv-0457-KJD-GWF, 2018 WL 5019376 (D. Nev. Oct. 16, 2018).

The facts here are similar to Diamond Spur, and the result is the same: BANA's deed of trust survived the association's foreclosure. Hitchen and South Valley brings a litany of arguments challenging BANA's tender. Those arguments break down into three main groups. First, Hitchen argues that equitable subrogation prevented the bank from preserving its deed of trust because, by paying the superpriority lien, the bank assumed the position of Borrowers. Second, Hitchen argues that BANA's deed of trust must be extinguished because Hitchen was an innocent third-party purchaser. Finally, Hitchen and South Valley challenges the validity of the tender itself and the admissibility of BANA's evidence of that tender. Hitchen and South Valley claims that the bank's records have not been adequately authenticated. None of Hitchen and South Valley's arguments dissuade the Court from applying Diamond Spur and finding for BANA.

1. Equitable subrogation

First, in the nonjudicial-foreclosure context, equitable subrogation would not prevent BANA from satisfying South Valley's superpriority lien. Equitable subrogation allows a person who pays off someone else's encumbrance to "assume the same priority position as the holder of the previous encumbrance." Houston v. Bank of America, 78 P.3d 71, 73 (Nev. 2003). In effect, the party paying the debt on behalf of another may "leap-frog over an intervening lien holder." Am. Sterling Bank v. Johnny Mgmt. LV, Inc., 245 P.3d 535, 539 (Nev. 2010). Through subrogation, a junior lienholder may satisfy a senior lienholder's encumbrance and ascend to the senior lienholder's priority position. Houston, 78 P.3d at 73.

However, Diamond Spur is clear that a bank's tender of the superpriority lien extinguishes that lien and preserves the bank's deed of trust. 427 P.3d at 121. There, the bank's

valid tender *cured* the default as to the superpriority portion of the HOA's lien. Equitable subrogation did not prevent curing the delinquency as Hitchen and South Valley suggests. Hitchen and South Valley acknowledge this but fail to distinguish Diamond Spur from this case. Instead, they argue that the Nevada Supreme Court got Diamond Spur wrong. See Def.'s Opp. to Pl.'s Mot. Summ. J. 7, ECF No. 54 ("It cannot be the case that the Nevada Supreme Court intended to disrupt more than 150 years of established law and jurisprudence respecting [equitable subrogation]"). This case is neither the time nor the place to challenge the Nevada Supreme Court's Diamond Spur decision. And this Court is bound by the Nevada Supreme Court's interpretation of the applicability of equitable subrogation as it relates to NRS § 116. See Ticknor v. Choice Hotels Intern., Inc., 265 F.3d 931, 939 (9th Cir. 2001). Accordingly, the Court rejects Hitchen and South Valley's argument that equitable subrogation prevented BANA from preserving its deed of trust through valid tender.

### 2. Bona Fide Purchaser

Next, Hitchen argues that its status as an innocent bona fide purchaser protects its interest at the bank's expense. It points to Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bankcorp, Inc. for support. 366 P.3d 1105 (Nev. 2016). The Shadow Wood court, however, confronted different facts than these. There, the Nevada Supreme Court reviewed a lower court decision that equitably set aside a foreclosure as unreasonable or oppressive. Id. at 1109. Although a district court may exercise its equitable authority to set aside an unjust foreclosure sale, the bank failed to demonstrate that the foreclosure sale was so defective that it must be set aside. Id. at 1114. The Supreme Court also found that *when a court sits in equity*, it should not grant relief "to the possible detriment of innocent third parties." Id. at 1115 quoting Smith v. United States, 373 F.2d 419, 424 (4th Cir. 1966).

Unlike Shadow Wood, BANA's tender argument does not require this Court to sit in equity. To the contrary, the Court has determined that South Valley's foreclosure did not extinguish BANA's deed of trust because the bank cured the superpriority default before the foreclosure. While the Court is aware of the effect its decision has on Hitchen, its third-party status did not prevent BANA from preserving its deed of trust. Therefore, because the Court is

- 5 -

not sitting in equity, it need not consider the balance of equities nor the effects of its decision on a third-party.

        Thus, Hitchen's status as a bona fide purchaser does not matter here. Where a lender has cured the superpriority default, the association has no authority to foreclose. Any resulting foreclosure is void as to the superpriority lien. <u>Diamond Spur</u>, 427 P.3d at 121. When BANA cured South Valley's outstanding default, South Valley lost all power to convey that portion of its interest in the property. <u>Id.</u> Therefore, whether Hitchen was a bona fide purchaser for value is irrelevant.

### 3. Conditional Tender

        Hitchen and South Valley contend that BANA's offer of tender was invalid because it was improperly conditional. The Court is not persuaded. First, a conditional tender is not per se invalid. If the tender is conditional, the tendering party must have the right to insist on the conditions. <u>Diamond Spur</u>, 427 P.3d at 118. Nevertheless, South Valley argues that the conditions of this tender violate NRS § 116 because they would require South Valley to waive any right to the nuisance or abatement fees that § 116 permitted them to collect. Setting aside the fact that Hitchen and South Valley have not submitted evidence that BANA owed nuisance and abatement charges in this case, the Nevada Supreme Court has already found that such offers of tender do not violate § 116. <u>Diamond Spur</u> and <u>Thomas Jessup</u> both analyzed offers of tender that were nearly identical to the offer of tender in this case. <u>See</u> <u>Diamond Spur</u>, 427 P.3d at 118; <u>Thomas Jessup</u>, 435 P.3d at 1218–19. Neither offer offended § 116, and this Court finds no reason to deviate from that determination.

### 4. Admissibility and Authentication of Evidence

        Finally, the Court finds no defect with BANA's evidence. Hitchen argues that BANA failed to authenticate the account ledger that it used to calculate nine-months of South Valley's past-due assessments. The argument is two-fold: the account statement is inadmissible hearsay and the affidavit authenticating the statement is defective because Miles Bauer was not custodian of records for South Valley. Neither argument renders these documents inadmissible. First, the business records exception does not require that the custodian of record for the business

that created the document authenticate that document. See MRT Const. Inc. v. Hardrives, Inc., 158 F.3d 478, 483 (9th Cir. 1998). Like here, an official from another entity who relied upon the accuracy of the business record may properly authenticate it. Id.; see also Fed. R. Evid. 803(6). Accordingly, the account statement provided by HAS to Miles Bauer is not inadmissible hearsay.

BANA has met its burden with the affidavit. Kendis, the affiant, had adequate knowledge and information to authenticate these business records. Kendis stated he was familiar with the type of records maintained by Miles Bauer in connection with [this] loan. He testified that the ledger "is what it is claimed to be … [a] Statement of Account from [HAS] dated August 30, 2013, received by Miles Bauer[.]" See Plaintiff's Mtn. for Partial S. Judgment (#50), Exhibit 7. The Court, therefore, overrules Hitchen and South Valley's objection to BANA's evidence.

In sum, BANA's deed of trust survived South Valley's trustee's sale because the bank's tender cured the superpriority lien balance before foreclosure. That tender voided South Valley's foreclosure as to BANA's interest in the property. Therefore, Hitchen acquired the property subject to BANA's existing deed of trust. The Court, therefore, grants Plaintiff Bank of America's motion and declares that its deed of trust still encumbers the property.

### B. Hitchen's Counterclaims

Hitchen filed counterclaims seeking to quiet title against BANA. Having found that BANA's tender cured the superpriority lien before South Valley's foreclosure sale, Hitchen purchased the property subject to BANA's lien. Accordingly, Hitchen's claims for relief must be dismissed with prejudice.

### C. BANA's Remaining Wrongful Foreclosure and Breach of NRS § 116 Claims

After granting BANA's motion and finding that its deed of trust survived South Valley's foreclosure, only BANA's claims for wrongful foreclosure and breach of NRS § 116 against HAS and South Valley and the bank's injunction claim against Hitchen remain. As for BANA's wrongful foreclosure and breach of NRS § 116 claims, the bank pleaded those claims in the alternative to its quiet title and declaratory relief claims. Because the Court has granted judgment on the bank's quiet title claim, it need not consider alternative claims. Accordingly, BANA's wrongful foreclosure and breach of NRS § 116 claims against South Valley and HAS are

dismissed.

Likewise, the Court dismisses BANA's injunctive relief claim against Hitchen. Although styled as a stand-alone cause of action here, an injunction is a remedy. See <u>Jensen v. Quality Loan Svc. Corp.</u>, 702 F.Supp.2d 1183, 1201 (E.D. Cal. 2010); <u>In re Wal-Mart Wage and Hour Emp't Practices Litig.</u>, 490 F.Supp.2d 1091, 1130 (D. Nev. 2007). Additionally, an injunction at this point is unnecessary. The Court has already quieted title and provided the declaratory relief the bank sought. Therefore, the Court dismisses BANA's injunctive relief claim against Hitchen.

<u>IV. Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that Plaintiff/Counterdefendant Bank of America, N.A.'s Motion for Partial Summary Judgment (#50) is **GRANTED**. The Court declares that BANA's deed of trust in the property located at 733 Hitchen Post Drive, Henderson, Nevada survived South Valley Ranch Community Association's nonjudicial foreclosure. The Court also declares that whatever interest Defendant Hitchen Post Dr. Trust acquired in the property it takes subject to Plaintiff's first deed of trust.

IT IS FURTHER ORDERED that Defendant South Valley Ranch Community Association's Motion for Summary Judgment (#62) is **DENIED as moot**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Plaintiff/Counterdefendant and against Defendants South Valley Ranch Community Association, Homeowner Association Services, Inc., and Defendant/Counterclaimant Hitchen Post Dr. Trust.

Dated this 25th day of September, 2019.

Kent J. Dawson
United States District Judge